WOVEN WIRE MATTRESS COMPANY *v.* WIRE WEB BED COMPANY.

*(Circuit Court, D. Connecticut. March 18, 1880.)*

Injunction for violation of patent.

SHIPMAN, J. This is an application for a temporary injunction to restrain an alleged violation of reissued letters patent,

dated May 29, 1877, for an improvement in bedstead frames. The original patent was issued November 30, 1869, to J. M. Farnham, assignor to the plaintiff.

The validity of the patent has recently been sustained by Judge Blodgett, holding the circuit court for the northern district of Illinois, in three contested cases, which were apparently tried together.

The claims of the patent are as follows:

1. The combination of the side bars and end bars, and elastic coiled wire, fabric "D," attached only to the end bars, with the end bars of the frame elevated above the side bars, so that the fabric will be suspended above the side bars from end to end of the frame.

2. The combination in a removable bed bottom or bedstead frame, of the side-bars "A," standards or corner pieces "B," end bars "C," and the elastic fabric "D," combined and arranged substantially as and for the purposes specified.

3. The inclined double end bars "C" of a bedstead frame, arranged substantially as and for the purposes herein shown and described.

4. The standards "B," constructed as described, arranged longitudinally, adjustable on the side bars of a bedstead frame, to permit the inclined end bars to be set a suitable distance apart, as set forth.

Judge Blodgett, in construing the first two claims by the light of the evidence as to the state of the art, says that while these claims "may be sustained for the combination of the side rails, standards, end rails, and elastic coiled wire fabric, yet it must be limited to the peculiar kind of side rails, standards and end rails shown, or their manifest equivalents. Side rails, end rails, and elastic coiled wire fabric were old; but the inclined end rail, made in two parts for the purpose of clamping the fabric and holding it suspended by means of the inclination between the points of attachment, seems, so far as the proof of these cases shows, to have been the invention of Farnham. So, too, his 'standards,' or corner pieces, 'B,' are not shown to have been anticipated by any prior user or inventor."

The first two claims of the patent are found only in the reissue. The third and fourth claims were in. the original patent. Judge Blodgett is evidently of opinion that the end bars of the first claim must be the "inclined double end bars" of the third claim, and that the standard of the second claim must be adjustable on the side bars, so as to permit the enclosed end bars to be set a suitable distance apart, substantially as stated in the fourth claim. The point in dispute between the parties in this case, upon the question of infringement, is in regard to the inclination of the end rails. It is admitted that the frame which is produced is a fair sample of the articles made by the defendants. The end rails are certainly inclined, not nearly to such an extent as in the plaintiff's bed frames, but they are plainly inclined, so that the strain of the bed bottom comes upon the double end of the end bar, and the under side of the fabric does not rest substantially upon the end bars. How this inclination is effected was not made clear. I do not think that it results from the strain of the fabric upon an uninclined bar. The bar must be inclined when the frame and the fabric are put together.

Upon the question of novelty the old bed frame which came from Baltimore did not impress me as originally and designedly having inclined end bars. If the end bars are now inclined I think such inclination is the result of wear and tear.

An injunction should issue against violation of the first and third clauses of claim.